UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.: 0:20-cv-61570

JOEL PEREZ and MARISOL RODRIGUEZ,

Plaintiffs,

v.

NATIONAL FIRE & MARINE INSURANCE COMPANY,

Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Pursuant to Rule 12(b)(6) and 12(d), Defendant National Fire & Marine Insurance Company ("NF&M") hereby moves to dismiss, or in the alternative, moves for summary judgment on the Plaintiffs' failure to comply with a condition precedent to pursuing their breach of contract claim against NF&M, namely their duty to notify NF&M promptly after suffering a covered loss and, in support, would say as follows:

**I.     FACTS**

NF&M issued a policy of insurance for the period 10/17/2019-10/17/2020, NF&M policy #NF033FL0304673 ("Policy") to the Plaintiffs that provides insurance coverage from damages caused by certain covered perils for the property located at 11431 NW 30th St, Sunrise FL 33323 (the "Subject Property"). The Named Insureds under that Policy were the Plaintiffs Joel Perez and Marisol Rodriguez (hereafter, the "Insureds"), who are the owners of the Subject Property subject to a mortgage extended by Flagstar

CASE NO.: 0:20-cv-61570

Bank.  The Insureds suffered a March 17, 2020 loss due to a leak from the shower pan in the master bathroom of the Subject Property (the "Loss").

The Insureds reported the Loss on March 24, 2020, seven later after it occurred. Nevertheless, it is not the amount of time that had passed in this instance before the Loss was reported that is important, but it is what the Plaintiffs did in the interim that is important.  By the time that the Insureds reported the Loss, two plumbers had already visited the Subject Property to assess the cause of the Loss.  In addition, and more importantly, <u>permanent</u> demolition and repair work on the Subject Property's master bathroom and other areas of the Subject Property had already taken place, which prevented NF&M and its independent adjuster from being able to assess the damage and the covered losses which occurred as a result of the Loss as it appeared prior to the commencement of this demolition work.  Specifically, the second of the two plumbers had cut into the concrete slab underneath the house and removed the cast iron drain lines that ran through virtually every room in the Subject Property.  In addition, some of the drywall and baseboard in the bedroom adjoining the master bathroom also had been removed at the time the Insureds reported the Loss and NF&M's field adjuster was able to inspect the Subject Property.  As reflected in greater detail below, not only did this prejudice NF&M, but it materially prejudiced NF&M because it was unable to assess the covered losses to the Subject Property as a result of the Loss prior to the Plaintiffs undertaking such destructive permanent actions to the Subject Property.

The Subject Property was inspected on April 1, 2020 by Ben Roberts, an independent adjuster affiliated with Integrity Adjusters who was engaged by Trident

CASE NO.: 0:20-cv-61570

Claims Management, LLC ("Trident"), NF&M's third-party claims administrator, to inspect the Loss and estimate the damages caused by the Loss. Nevertheless, this was a tall order given that Mr. Perez had already had the entire cast iron drain line removed by the time that Mr. Roberts was able to inspect the Subject Property. Specifically, Mr. Roberts wrote in his report to Trident that:

> The insured noticed water coming out from underneath the toilet in the main bathroom, and the shower and toilet in the master bathroom. He called a plumber to inspect the line fearing that there was a clog in the line. A plumber inspected the lines with a video camera and found an obstruction approx.10'ft from main bathroom toilet under the hallway slab. He could not move the camera beyond that point and told the insured that it appeared to be a blockage, possibly a collapsed cast iron drain line. He also inspected the plumbing drain line in the master bathroom and found an additional obstruction there. The plumber gave the insured an estimate for ingress/egress to replace the main cast iron drain line throughout the entire dwelling. The insured said that he wanted to get a second bid for the job and the first plumber would then not give the insured the video footage of the inspection.
>
> The insured then proceeded to have the entire cast iron drain line system removed by the 2nd plumber with concrete cuts through the tile flooring and slab in the main bathroom, bedroom 1, hallway, living room, kitchen, master bedroom and master bathroom, extending out the master bedroom wall to the street. The removed cast iron drain line was placed on a tarp in the patio area of the rear elevation for inspection. Upon inspection there appears to be an obstruction prior to a main p-trap made up of a nail brush and fat globule. This may have been the kitchen drain line or toilet line in the bathroom.
>
> Some of the drywall and baseboard in bedroom 1 has been removed that is adjacent to the bathroom due to water damage. FA also found water damage in the kitchen base cabinet toe-kick that is adjacent to the master bathroom indicating possible water from the main shower pan may have leaked there.  <u>It is, however, impossible to tell as the master bathroom shower has been covered in dirt from the trenching and the shower curb has been removed</u>.
>
> <u>Without the video footage from the initial plumbing inspection or now the ability to have  another plumber video inspect the original cast iron drain</u>

> <u>line it is impossible to know whether the line was collapsed or merely blocked by an obstruction that could have been cleared with the proper method (jetting).</u>
>
> Based upon the inspection at this dwelling there was water damage to the main bathroom wall, tile, and baseboards and water damage to the bedroom 1 wall which was removed prior to inspection to allow for access to the plumbing fixtures.  Insured stated that water was seen on the floor and baseboards in the bedroom.  All other construction observed to the kitchen, living room, master bedroom, and master bathroom was caused due to accessing the drain line.  Any possible water damage caused by the master bathroom shower pan leak was not able to be inspected due to the construction to the drain line in the room.

Exhibit A at 3-4 (emphasis added).  He assessed the covered losses at $5,916.88.  *See* Exhibit B.  Specifically, he notes that after the $2,500 deductible was applied, he estimated the Plaintiffs to be entitled to payment in the amount of $3,359.28.  *See* Exhibit B.

Nevertheless, as the plain language of his report attached as Exhibit A makes clear, the Defendant's independent adjuster was substantially impaired in his ability to assess the covered losses as a direct result of the Plaintiffs' failure to comply with their own obligations under the contract at issue, the Policy.  He specifically notes this when he writes that "it is impossible to know whether the line was collapsed or merely blocked by an obstruction that could have been cleared with the proper method (jetting).  Exhibit A at 3.  He further notes that "[a]ny possible water damage caused by the master bathroom shower pan leak was not able to be inspected due to the construction to the drain line in the room."  *Id.* at 4.

Mr. Perez is a public adjuster, who is licensed by the State of Florida.  (Doc 1-6).  He completed an estimate that the covered losses from the March 17th loss were

$134,599.52.[1]  (Doc. 1-4).  He also completed a sworn Proof of Loss executed under Penalty of Perjury that estimated he and his wife's covered losses at $132,099.52. (Doc. 1-5).  Nevertheless, he was operating with infinitely more information at his disposal than the Defendant when he generated both this estimate and his Proof of Loss given that he was able to see the master bathroom immediately after the Loss occurred and he was present for the inspections conducted by both plumbers that he and his wife called out to the Subject Property to inspect the Loss.

The problem, in a nutshell, is that NF&M cannot, and never could, determine the full amount of the insurance benefits that were owed to the Plaintiffs as a result of the Loss because it never had the opportunity to properly inspect the master bathroom of the Subject Property after the Loss occurred and prior to the Plaintiffs making destructive repairs.  Instead, by the time that its independent adjuster made his first visit to the Subject Property only fifteen (15) days after the Loss occurred and eight (8) days after the Loss was reported by the Plaintiffs, the ability for NF&M to investigate the facts had been lost.  Although this may seem, in the scheme of things, to be a fairly quick reporting of the Loss, the problem is instead what the Plaintiffs did in the interim.  The Plaintiffs specifically had a plumber remove the cast iron drain line throughout nearly the entire house.  This entailed cutting through the tile and concrete slab throughout nearly the entire house and also removing portions of the shower pan that was suspected to be the original cause of the Loss.  This prevented the Defendant from being able to

---

[1] Defendant does not concede the conclusions drawn by Mr. Perez are accurate given that he has a financial interest in the outcome of this insurance claim and thus would have the incentive to estimate a covered loss as large as possible.

meaningfully assess the extent of their damages and, in turn, materially prejudiced NF&M.

## II.     THE ALLEGATIONS IN THE COMPLAINT

The Plaintiffs are pursuing a claim for breach of contract against NF&M In this lawsuit.  In support of that claim, they allege that "On or about 3-17-2020, while the Policy was in full force and effect, Plaintiffs' insured property sustained a covered loss; to wit: an accidental discharge of water from a plumbing system causing sudden and direct physical loss to the insured property (hereafter the 'loss')."  (Doc. 1-1 p. 4 ¶ 7). They further allege that "Defendant breached the insurance policy contract by failing to pay the full amount of insurance benefits due Plaintiffs as [a] result of the loss."  *Id.* ¶ 9. Plaintiffs seek an unspecified amount of damages in addition to attorney's fees under Section 626.9373, Florida Statutes, against NF&M.

## III.    THE RELEVANT POLICY PROVISIONS

The Policy provides that "We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage."  (Doc. 1-3 at 89).  Of particular significance, the Policy also contains a specific section entitled "Duties after Loss" that sets forth the duties of the insured(s) when a loss has occurred.

> **B. Duties After Loss**
> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us.  These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:
>
> 1. Give prompt notice to us or our agent;

> \*\*\*\*
>
> 4. Protect the property from further damage. If repairs to the property are required, you must:
> a. Make reasonable and necessary repairs to protect the property; and

*Id.* at 96.

### III.  MEMORANDUM OF LAW

### LEGAL ARGUMENT

In this case, dismissal of the Complaint for failure to state a claim is warranted under Rule 12(b)(6) because, even assuming the truth of the Complaint's factual allegations, a dispositive legal issue precludes relief for the Plaintiff. Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). *See also* Hous. Specialty Ins. Co. v. Vaughn, No. 8:15-cv-2165-T-17AAS, 2016 U.S. Dist. LEXIS 180504, at *9 (M.D. Fla. Aug. 4, 2016).  That dispositive legal issue is the Plaintiffs' failure to comply with a condition precedent to making a claim under the Policy, specifically the requirement of timely reporting the Loss to NF&M and the substantial prejudice this late notice caused to NF&M.  As set forth in greater detail below, the Plaintiff had already commenced permanent destructive repairs at the time that the loss was reported for the first time to Trident by the Plaintiffs on March 24, 2020.  This prevented NF&M from being able to fully and fairly evaluate the covered loss that occurred on March 17, 2020 as reflected in the report of Ben Roberts, NF&M's field adjuster.  Trident's IA did the best he could to estimate the covered losses that occurred as a result of the Loss, but even he notes in his report that he was unable to turn back time and tell the state of the damage to the master bathroom as a result of the shower

pan or even what the cause of the Loss was given that the Plaintiffs had already commenced, and were well along the way, to completing destructive permanent repairs when he inspected the Subject Property.

Mr. Roberts was, in essence, attempting to recreate a scene that he was not present for and, in reality, he was left guessing at the state of the master bathroom of the Subject Property on a March 17th as a result of the Loss. In addition, the Plaintiffs had every incentive to inflate the amount of their covered losses as a result of the Loss in order to maximize their recovery under the Policy. This wanton disregard of their obligations under the Policy merits the dismissal of this case with prejudice, whether at the motion to dismiss stage under Fed. R. Civ. P. 12(b)(6) or at summary judgment under Rule 56 if this Court is inclined to convert this motion to dismiss into a Rule 56 motion for summary judgment under Rule 12(d). Such is particularly true given that Mr. Perez is a licensed public adjuster who is permitted by virtue of his licensure by the State of Florida to assist individual policyholders in disputes with their insurance companies.

**A.     The Applicable Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." <u>Alvarez v. Attorney Gen. for Fla.</u>, 679 F.3d 1257, 1261 (11th Cir. 2012). Legal conclusions, as opposed to well-pled

factual allegations, "are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Further, dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the complaint's factual allegations, a dispositive legal issue precludes relief. Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). *See also* Hous. Specialty Ins. Co. v. Vaughn, Case No. 8:15-cv-2165-T-17AAS, 2016 U.S. Dist. LEXIS 180504, at *9 (M.D. Fla. Aug. 4, 2016).

Finally, to the extent that a party presents a defense under Rule 12(b) or moves for judgment on the pleadings under Rule 12(c) and includes materials outside the pleadings that are necessary to resolve the issues raised by the motion, the Court is permitted to convert the motion to dismiss to a motion for summary judgment under Rule 56 pursuant to Rule 12(d).

**B.     The Legal Effects of the Insured's Failure to Cooperate Under an Insurance Policy**

An insured's failure to cooperate is a material breach of the contract by the insured. "A notice of damage is a pre-condition to a claim." Bankers Ins. Co. v. Macias, 475 So. 2d 1216, 1218 (Fla. 1985). "The insured has the burden to show the lack of prejudice if its insurer lost the opportunity to investigate the facts of the claim." Stark v. State Farm Fla. Ins. Co., 95 So. 3d 285, 287-88 (Fla. 4th DCA 2012). The burden is "on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts." Macias, 475 So. 2d at 1218.

**C.     The Insureds Failed to Timely Report The Loss to NF&M**

CASE NO.: 0:20-cv-61570

In this case, there is a dispositive legal issue that dispenses with this case and merits dismissal of the Complaint. The Plaintiffs in this case failed to timely report the Loss to NF&M. This is even more egregious given Plaintiff Joel Perez's own background as a public adjuster and a professional who has worked in the insurance field for years. (Doc. 1- 6). Given Florida caselaw that a party to a contract, including an insurance policy is presumed to have read that contract, *see* S<u>wift v. North American Co. Life & Health Ins,</u> 677 F. Supp, 1145, 1150 (S.D. Fla. 1987(noting that *"the courts of this state have clearly held that a person who signs a contract is presumed to know its contents"*), there is no excuse for Plaintiffs not to have reported the Loss to NF&M prior to a plumber cutting into the concrete slab the majority of the home rested on and removed the cast iron drain system that ran throughout the house.

**D.    The Insureds' Failure to Timely Report The Loss Materially Prejudiced NF&M In Its Ability to Assess the Plaintiffs' Damages as a Result of the Loss**

The Insureds' failure to timely notify NF&M of the Loss prior to beginning destructive repairs materially prejudiced NF&M in several respects. First, it deprived NF&M of the opportunity to inspect and assess the extent and nature of the Loss at the time that it occurred. As a result of their actions, their "insurer lost the opportunity to investigate the facts of the claim." <u>De La Rosa v. Fla. Peninsula Ins. Co.</u>, 246 So. 3d 438, 441 (Fla. 4th DCA 2018). Perhaps because of the complete lack of information available to it, NF&M has assessed the covered losses as a result of the Loss at approximately $5,900, whereas Plaintiff Joel Perez, a licensed public adjuster, ultimately assessed it at in excess of $130,000. However, because the Insureds failed

to timely report the Loss prior to beginning destructive repairs upon the bathroom and throughout the house, NF&M was deprived of the opportunity to perform any meaningful inspection and review of the Loss and, in particular, what caused the Loss as well as what the damages as a result of the Loss were. Indeed, as reflected in Mr. Roberts's report, "Any possible water damage caused by the master bathroom shower pan leak was not able to be inspected due to the construction to the drain line in the room." Exhibit A at 3. In writing this, Mr. Roberts, as the duly authorized agent of NF&M to inspect and assess the covered losses and other damages as a result of the Loss, was thus essentially left to guess at the amount of damage that actually occurred as a result of the Subject Loss. Thus, given that the Subject Property was in a drastically different state than when the Loss actually occurred due solely to the Plaintiffs' delayed notice, NF&M was unable to properly assess the covered losses as a result of the March 17th loss. The Plaintiffs' behavior in not timely reporting the claim prior to commencing destructive repairs on the master bathroom subjected NF&M to material prejudice in depriving it of the only opportunity that it had to truly assess the nature and extent the Insureds' damages as a result of the Loss.

      Mr. Perez had time to solicit bids from two plumbers before he notified NF&M of the loss. Indeed, he had called out a plumber, had the plumber perform a video camera inspection of the drain line, but then decided he wanted a second opinion. This is all well and good, but it was the next step that was the problem. As Mr. Roberts writes in his report, "The insured then proceeded to have the entire cast iron drain line system removed by the 2nd plumber with concrete cuts through the tile flooring and slab in the

main bathroom, bedroom 1, hallway, living room, kitchen, master bedroom and master bathroom, extending out the master bedroom wall to the street." Exhibit A at 3. He further noted that "Any possible water damage caused by the master bathroom shower pan leak was not able to be inspected due to the construction to the drain line in the room." *Id.* at 4. Thus, as Mr. Roberts nicely summarizes, NF&M was unable to inspect the water damage caused by the Loss due to the Insureds' unilateral decision to have the entire cast iron drain line system removed by the second plumber he consulted with, who performed cutting all the way to poured concrete slab in virtually every room in the Subject Property.

Secondly, the Insureds' failure to timely notify NF&M also substantially increased the likelihood that NF&M will be on the hook for a substantial amount in both indemnity and attorney's fees at the conclusion of this litigation. Under Section 626.9373, Florida Statutes, given that it is a non-admitted surplus lines insurance carrier, NF&M is responsible for the Plaintiffs' attorney's fees if they obtain a judgment against NF&M and recover one cent (i.e. $0.01) more than NF&M assessed the covered losses at as a result of the Loss in this action. This is particularly significant in this case because of the large difference between what Mr. Perez himself assessed the loss at $134,599.52, whereas NF&M assessed the value of the covered loss (before application of the applicable $2,500 deductible) at $5,916.98. Therefore, the Plaintiffs' failure to timely notify NF&M of the Loss could also expose NF&M to an increased amount of attorney's fees if this case goes to trial and a verdict is returned for the Plaintiffs.

## Conclusion

CASE NO.: 0:20-cv-61570

For all these reasons, NF&M would therefore request that this Court dismiss the Plaintiffs' Complaint with prejudice under Rule 12(b)(6) for failure to state a claim based upon their failure to comply with a condition precedent to suing NF&M for breach of contract or grant it summary judgment on the Plaintiffs' failure to comply with their post-loss obligation to timely notify NF&M after the Loss.

Respectfully submitted,

By:  /s/ *Stephen P. Smith*
**Stephen P. Smith, Esq.**
(FBN: 85414)
Email: ssmith@marlowadler.com
**MARLOW ADLER ABRAMS NEWMAN & LEWIS**
4000 Ponce de Leon Boulevard, #570
Coral Gables, FL 33146
Telephone: (305) 446-0500
Facsimile: (305) 446-3667
*Attorneys for Defendant,*
*National Fire & Marine Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 4, 2020, I electronically filed the foregoing through the CM/ECF system, which provides an e-notification to the parties listed below.

By:  /s/ *Stephen P. Smith*
**Stephen P. Smith, Esq.** (FBN: 85414)
Email: ssmith@marlowadler.com

## SERVICE LIST

CASE NO.: 0:20-cv-61570

*Joel Perez and Marisol Rodriguez v. National Fire & Marine Insurance Company*

Kenneth R. Duboff, Esq.
Duboff Law Firm
680 NE 127th Street
North Miami, FL  33161
CourtDocument@DuboffLawFirm.com
Attorney for Plaintiff
*Via Electronic Mail*